AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

SEALED FILED

JUN 0 8 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | )  |
|---|---|
| INFORMATION ASSOCIATED WITH | ) |
| BERUCKG94@GMAIL.COM, | ) |
| BLAKEANDRE4@GMAIL.COM, | ) |
| BRIANCLARK096@GMAIL.COM, AND | ) |
| WILLHARR6@GMAIL.COM, THAT IS STORED AT | ) |
| PREMISES CONTROLLED BY GOOGLE LLC | ) |

Case No.

2:18 - SW - 0495   EFB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S. Code § 371 | [conspiracy] |
| 18 U.S. Code § 641 | [theft of government property] |
| 18 U.S. Code § 1028A | [aggravated identity theft] |
| 18 U.S. Code § 1343 | [wire fraud] |
| 42 U.S. Code § 408 | [Social Security fraud] |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Fagan, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____June 8, 2018_____

_____
*Judge's signature*

City and state: Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge

1  McGREGOR W. SCOTT
   United States Attorney
2  ROBERT J. ARTUZ
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

| 11 | In the Matter of the Search of: | CASE NO. |
|---|---|---|
| 12 | INFORMATION ASSOCIATED WITH BERUCKG94@GMAIL.COM, | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT |
| 13 | BLAKEANDRE4@GMAIL.COM, | |
| 14 | BRIANCLARK096@GMAIL.COM, AND WILLHARR6@GMAIL.COM, THAT IS | **FILED UNDER SEAL** |
| 15 | STORED AT PREMISES CONTROLLED BY GOOGLE LLC | |

16

17       I, Sean Fagan, being first duly sworn, hereby depose and state as follows:

18              **I.    INTRODUCTION AND AGENT BACKGROUND**

19       1.    I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§

20  2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google LLC (hereafter "Google") to disclose to the

21  government records and other information, including the contents of communications, associated with

22  the above-listed accounts that are stored at premises owned, maintained, controlled, or operated by

23  Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043, United

24  States. The information to be disclosed by Google and searched by the government is described in the

25  following paragraphs and in Attachments A and B.

26       2.    I am a Special Agent with the Social Security Administration's Office of Inspector

27  General, and have been since September 2017. I am currently assigned to the San Francisco Field

28  Division where I investigate threats against Social Security employees and facilities, employee

AFFIDAVIT                                    1

1  malfeasance, and Social Security fraud such as direct deposit fraud, identity theft, Social Security
2  Number misuse, and other types of fraud against Social Security programs. I have six years of prior
3  federal law enforcement experience as a Special Agent with the Diplomatic Security Service under the
4  U.S. Department of State where both domestically and internationally I investigated crimes such as
5  passport fraud, visa fraud, identity theft, employee malfeasance, and threats and other crimes involving
6  U.S. Government personnel, property, and information. In 2011, I completed the Federal Law
7  Enforcement Training Center's Criminal Investigator Training Program, a comprehensive 11-week
8  course that included training in electronic sources of information, conducting investigations in a cyber
9  environment, and financial aspects of investigations. I then completed the Diplomatic Security
10 Service's Basic Special Agent Course that included an additional 12 weeks of training in topics such as
11 dignitary protection, visa and passport fraud investigations, and international investigations.
12 Furthermore, over the course of my federal law enforcement career, I have worked with and received
13 guidance from other experienced investigators from various federal, state, local, and foreign law
14 enforcement agencies in the fields of general crimes, fraud, identity theft, financial crimes, digital
15 crimes, dignitary protection, kidnapping/hostage-taking, counterintelligence, and terrorism. Prior to
16 beginning my federal law enforcement career, I served in the U.S. Marine Corps for 10 years as an
17 infantryman and counterintelligence/human intelligence officer. I also hold a bachelor's of science in
18 criminal justice.

19        3.    The facts in this affidavit come from my personal observations, my training and
20 experience, and information obtained from other agents and witnesses. This affidavit is intended to
21 show simply that there is sufficient probable cause for the requested warrant and does not set forth all of
22 my knowledge about this matter.

23        4.    Based on my training and experience and the facts set forth in this affidavit, there is
24 probable cause to believe that former Social Security Administration (SSA) employee Eric Lemoyne
25 Willis and a subject named Darron Dimitri Ross engaged in, and continue to engage in, a conspiracy or
26 scheme involving unlawful acts including, without limitation: Willis using his official position at SSA to
27 gather the personally identifiable information of Social Security beneficiaries and using that information
28 to unlawfully divert the SSA benefits of at least 129 victims to fraudulently-created bank accounts

1  controlled by him or Ross.  There is probable cause to believe that Willis and Ross committed violations

2  of at least 18 U.S. Code § 371 [conspiracy], 18 U.S. Code § 641 [theft of government property], 18 U.S.

3  Code § 1028A [aggravated identity theft], 18 U.S. Code § 1343 [wire fraud], and 42 U.S. Code § 408

4  [Social Security fraud].  There is also probable cause to search the information described in Attachment

5  A for evidence, instrumentalities, and fruits of these crimes further described in Attachment B.

6  ## II.    JURISDICTION

7      5.      This Court has jurisdiction to issue the requested warrant because it is "a court of

8  competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).

9  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense

10  being investigated." 18 U.S.C. § 2711(3)(A)(i).

11  ## III.    PROBABLE CAUSE

12  ### Eric Willis

13      6.      SSA terminated Willis from employment on January 5, 2018.  At the time of his

14  termination, Willis was an Operations Supervisor at the SSA field office in Lodi, California where he

15  worked from February 7, 2016 to the date of his termination.  Prior to his reassignment to the Lodi

16  office, Willis was an Operations Supervisor at SSA's South Sacramento field office.  Willis started

17  working for SSA in 2003.

18      7.      As of June 1, 2018, through examining SSA records, I have identified 129 Social

19  Security retirement and disability beneficiaries whose benefits were unlawfully diverted to other bank

20  accounts ("drop accounts") and whose SSA records Willis accessed prior to each fraudulent change.

21  After Willis queried a given victim, an unidentified individual then made a phone call to an SSA field

22  office somewhere in the U.S. from a variety of apparent prepaid cellphone numbers (commonly referred

23  to as "burner phones"), used the victim's personally identifiable information to impersonate the victim

24  to an SSA employee, and then successfully changed the victim's direct deposit to a drop account.  SSA

25  then paid the victim's next Social Security payment to the drop account.  In most cases, the victim

26  contacted SSA after the first missing Social Security payment.  SSA then restored the original direct

27  deposit information and reissued the missing payment to the victim.  However, in some cases the victim

28  did not contact SSA for several months or more.

1    8.    SSA records show Willis used his SSA computer to access reports for each and every one

2  of these 129 victims prior to the fraudulent direct deposit change.  For approximately 33% of the

3  victims, the fraudulent direct deposit changes were made within 30 days of Willis accessing their SSA

4  records, approximately 75% of the direct deposit changes were made within 90 days, and approximately

5  98% were made within 180 days.  The first known victim's direct deposit information was fraudulently

6  changed on December 3, 2015.  The most recent known victim's direct deposit was fraudulently

7  changed on May 2, 2018.  The total estimated theft loss for the 129 known victims is at least $393,000.

8    9.    I have found no explanation to justify an apparent 100% correlation between Willis'

9  query of a given Social Security Number and the fraudulent direct deposit change which follows shortly

10  thereafter.  Since Willis worked in an SSA field office whose primary role is to serve the public within

11  its geographic area of responsibility, it is notable that approximately 58% of the victims resided outside

12  of the geographic service areas for the Lodi and South Sacramento SSA offices where Willis worked.

13  More significantly, approximately 24% of the victims resided outside of the state of California entirely.

14  Based on my training and experience, there is probable cause to believe that Willis accessed these

15  victims' records for improper reasons, including to collect the personally identifiable information

16  necessary to unlawfully change each victim's direct deposit to a drop account.

17                                  **Bank Records for Drop Accounts**

18    10.    The Social Security benefits of the 129 beneficiaries were diverted to various drop

19  accounts held at American Express National Bank, Green Dot, and Metabank.  All three of these

20  financial institutions offer prepaid debit cards available for purchase in a retail store or online.  Many of

21  these prepaid debit cards have the ability to receive direct deposits like a traditional bank account.

22  Furthermore, since the accountholder information is usually provided online, it is easy to provide false

23  accountholder information when setting up the account.  Based on my training and experience, prepaid

24  debit cards are commonly utilized in direct deposit fraud schemes against SSA.

25    11.    I have identified 43 American Express, Green Dot, and Metabank accounts that were

26  used as drop accounts for the victims' Social Security benefits.  Of these, I have examined bank records

27  for 10 prepaid debit card accounts associated with approximately 50 victims between March 2016 and

28  January 2018.  After reviewing various records for the persons named on these 10 accounts and

1    speaking with several of the purported accountholders via phone, I believe the accountholders named on

2    the drop accounts are actually identity theft victims whose identities were used to open the drop

3    accounts without their knowledge.  The billing addresses listed on the 10 drop accounts are a variety of

4    Charlotte, North Carolina addresses.

5         12.    Counting debits of at least $50, the diverted Social Security payments were withdrawn

6    from the 10 drop accounts via approximately 340 transactions, the vast majority of which were cash

7    withdrawals of several hundred dollars each.  Based on my training and experience, the fact that the

8    funds in the drop accounts are overwhelmingly withdrawn in cash is indicative of criminal activity.

9    Approximately 73% of the withdrawals occurred in the Charlotte, North Carolina area, approximately

10   16% occurred in the southern California area (suggesting a southern California-based coconspirator),

11   and approximately 6% occurred in the Atlanta, Georgia area.  The remaining handful of withdrawals

12   occurred in Scottsdale, Arizona and Sandy, Utah.

13        13.    As one example, Green Dot account ending in 0799 is a drop account associated with

14   eight direct deposit, Social Security fraud victims.  Jeremy Davids is the individual listed as the

15   accountholder.  I spoke to Davids via phone: Davids stated he has never banked with Green Dot.

16        14.    In addition to the 10 drop accounts discussed above, more recently obtained bank records

17   indicate withdrawals from other drop accounts as recently as May 20, 2018.

18   **Internet Access Logs for Drop Accounts**

19        15.    Via a grand jury subpoena, I examined logs of internet protocol (IP) addresses that were

20   used to access the drop accounts via the internet.  According to Green Dot records, IP address

21   76.248.20.51 was used on May 16, 2016 to access Green Dot account 0799.  According to AT&T, the

22   related internet service provider, IP address 76.248.20.51 was assigned to Willis' home internet service

23   on that date.  According to AT&T subscriber information, Willis subscribed to AT&T home internet

24   service at 40 Park City Court, Apartment 11205, Sacramento, California, from May 21, 2015 until

25   October 4, 2016.  A Wells Fargo account application in Willis' name and signed by Willis on October

26   24, 2015 lists the same address as his statement mailing address and street address.

27        16.    In addition to the occasion discussed above, there were approximately 255 other

28   occasions where the 10 accounts I reviewed were accessed via the internet between February 2016 and

1  August 2017.  According to publicly available IP lookup tools, the majority of this activity was from IP

2  addresses in the Charlotte, North Carolina area.  Based on my training and experience and other

3  information contained in this affidavit, this information is indicative of a coconspirator operating in the

4  Charlotte area.

**Bank Records for Eric Willis**

6       17.    I have reviewed bank records for accounts held in Willis' name at Mokelumne Federal

7  Credit Union, Sun Pacific Federal Credit Union, and Wells Fargo.  During the period December 7, 2015

8  through November 20, 2017, there were 62 deposits into Willis' accounts totaling approximately

9  $74,000 where the source of the funds was not readily identifiable.  With the exception of two deposits,

10  all appear to be cash deposits; the two exceptions were wire transfers totaling $5,150 from an account at

11  Compass Bank in Willis' name.  Of the 62 deposits, six deposits totaling $10,240 occurred in the

12  Charlotte, North Carolina area and four deposits totaling $8,800 occurred in the San Diego, California

13  area.  Based on my training and experience, I believe these unexplained cash deposits are composed of

14  Willis' illicit earnings from the direct deposit fraud scheme discussed in this affidavit.

**Darron Ross**

16       18.    Surveillance footage provided by First Citizens Bank shows an automated teller machine

17  (ATM) withdrawal from Green Dot drop account 0799 for $403.00 on June 17, 2017 at a First Citizens

18  Bank drive-thru ATM in Huntersville, North Carolina.  In the footage, the person conducting the

19  withdrawal is driving a dark-colored Mercedes-Benz Sprinter van bearing North Carolina plates

20  EH4037.  According to a North Carolina vehicle registration search conducted by Customs and Border

21  Protection's National Law Enforcement Communications Center, the vehicle is currently registered to

22  Darron Dimitri Ross, North Carolina driver's license number 38643319.  The person conducting the

23  withdrawal appears to match Ross' driver's license photo.

24       19.    According to Green Dot, the debit card associated with the drop account ending in 1023

25  was ordered online and shipped to 1604 Oakdale Drive, Charlotte, North Carolina.  This account is

26  associated with eight direct deposit fraud victims and there were more than 50 withdrawals using the

27  debit card shipped to this address.  LexisNexis Accurint and official county records available online

28  associate this address with Ross' aunt, uncle, and cousins.

1    20.    The surname Ross is also Willis' mother's maiden name. According to SSA records and

2 the death certificate for Willis' mother, Willis' grandfather is "James Harrison Ross" or "James H.

3 Ross." According to SSA records, Darron Ross' great grandfather is "Harry Ross" or "James H. Ross."

4 If Willis and Ross share the common ancestor "James H. Ross," they are first cousins once removed.

5    21.    According to Officer Brian Tillack, Probation/Parole Officer, North Carolina Department

6 of Public Safety, Ross is under his supervision for probation since February 2018 for identity theft-

7 related offenses from August 2015 and January 2016. Ross was under Officer Tillack's supervision for

8 a previous period that ended in January 2017. I provided Officer Tillack with still images of the

9 aforementioned First Citizens Bank withdrawal conducted on June 17, 2017. Additionally I provided

10 still images of three other withdrawals at Sun Trust Bank ATMs from Green Dot drop account 1023 on

11 March 17, 2017; May 9, 2017; and January 19, 2018. Officer Tillack stated, "The first picture on

12 06/17/2017 is hard for me to tell. The others are most certainly Mr. Ross."

13    22.    The Police Department of Mooresville, North Carolina, arrested Ross on the evening of

14 January 30, 2016 for credit card fraud. Based on my discussions with Detective Chris Jorgensen of

15 Mooresville PD and review of the police reports, Mooresville PD had probable cause to believe that

16 Ross had recently communicated with a coconspirator via text message on a cellphone from his vehicle

17 to commit fraud. On the day of Ross's arrest, Mooresville PD seized two cellphones in Ross's

18 possession incident to his arrest, and it located and seized a third cellphone after a warrantless search of

19 Ross's vehicle pursuant to probable cause. Mooresville PD was able to determine that at least one of the

20 seized phones was used to communicate with Ross's coconspirator. The three cellphones seized from

21 Ross include two Apple iPhone cellphones and a Samsung cellphone.

22    23.    Mooresville PD also seized a Wells Fargo Bank transaction receipt found in Ross'

23 possession. I examined a photograph of this receipt and found that the receipt was for a $4,000 cash

24 deposit into a Wells Fargo bank account ending in 8228. The deposit occurred at 12:51 PM on January

25 30, 2016, several hours prior to Mooresville PD's arrest of Ross. The receipt indicated the deposit

26 would be credited to the account on February 1, 2016.

27    24.    I compared the Wells Fargo transaction receipt seized from Ross to bank records for

28 Wells Fargo account number 1288188228 held by Willis. I located a deposit for $4,000 made in a

1  branch/store and credited to the account on February 1, 2016. I spoke to Wells Fargo who confirmed

2  that the $4,000 deposit listed on Willis' statement for account number 1288188228 was the same deposit

3  listed on the receipt seized from Ross. The deposit occurred at Wells Fargo branch number 67393

4  located at 1616 Central Ave in Charlotte, North Carolina. The Wells Fargo branch is located less than

5  30 miles from the location where Mooresville PD arrested Ross.

6       25.    Based on my training and experience and the facts set forth in this affidavit, I believe

7  Ross deposited $4,000 of cash obtained through illicit means into the Wells Fargo account of Willis on

8  January 30, 2016, only hours prior to Mooresville PD's arrest of Ross the same day.

9  **Telephone Contact Between Willis and Ross**

10       26.    T-Mobile toll records for Willis' phone number (916-710-3366) for the period

11  04/05/2017 to 02/27/2018 list 113 call records between Willis' phone number (916-710-3366) and Ross'

12  phone number (980-254-1979). A LexisNexis Accurint report associates phone number 980-254-1979

13  with Ross. Officer Tillack confirmed 980-254-1979 as a phone number he previously used to contact

14  Ross. T-Mobile records state Willis is the subscriber for phone number 916-710-3366 with service

15  effective 04/04/2017.

16       27.    After examining T-Mobile toll records for Willis' cellular phone number 916-710-3366

17  between April 2017 and February 2018, I found his text message (also known as short message service,

18  SMS) usage to be disproportionately low when compared to his voice call usage. For example, Willis'

19  T-Mobile toll records list a total of 9,916 calls and text messages. Approximately 747 (7.5%) of the

20  records are text messages; the remaining records are phone calls. In terms of daily usage, Willis

21  averaged over 25 calls per day to or from his mobile number. However, he only averaged

22  approximately two text messages per day.

23       28.    Furthermore, of Willis' top 15 most contacted numbers (defined as total calls and text

24  messages to or from that number), all of which appear to be cellular phone numbers capable of sending

25  and receiving text messages, only five have records of any text messages. With 113 call records, Ross'

26  phone (980-254-1979) is Willis' 13th most contacted number but they exchanged zero text messages.

27  Therefore, there is probable cause to believe Willis uses a combination of other messaging services such

28  as instant messaging and email.

**Emails Associated with Drop Accounts**

29.     According to Green Dot, the email account associated with account 0819 is BLAKEANDRE4@GMAIL.COM.  According to bank and SSA records, SSA paid Social Security benefits for three different beneficiaries to this account.

30.     According to Green Dot, the email account associated with account 0152 is BERUCKG94@GMAIL.COM.  The accountholder is Erin Branson [sic].  According to bank and SSA records, SSA paid Social Security benefits for three different beneficiaries to this account.  According to Metabank records, the accountholder for account 5177 (not one of the aforementioned drop accounts) is Gary Beruck with the same email address, BERUCKG94@GMAIL.COM.  The address listed for Metabank account 5177 matches the address for two other drop accounts.  However, the card for Metabank account 5177 appears to have been returned to Metabank for an unknown reason and never activated.  While the card was never activated, I believe this account is still associated with the scheme discussed in this affidavit.  Furthermore, the fact Green Dot drop account 0152 and Metabank account 5177 share the same email address but different accountholder names is indicative of the email account's use for criminal purposes.

31.     According to Metabank, the email account associated with account 0787 is BRIANCLARK096@GMAIL.COM.  According to bank and SSA records, SSA paid Social Security benefits for six different beneficiaries to this account.

32.     According to American Express National Bank, the email account associated with account 9127 is WILLHARR6@GMAIL.COM.  According to bank and SSA records, SSA paid Social Security benefits for one beneficiary to this account.  American Express locked the account on October 4, 2017 for fraud.  William Harrison, the individual named on the account, was also one of the 129 direct deposit fraud victims.  I spoke to Harrison via phone where he stated he has never used prepaid debit cards nor used them for direct deposits, and was unaware of any accounts in his name at American Express.  Harrison has a Gmail account but it is not WILLHARR6@GMAIL.COM.  Harrison has lived in Stockton, California his entire life and cannot recall calling SSA prior to his missing check in September 2017, a result of his direct deposit being diverted via the scheme described in this affidavit.

/ / /

1       33.   I also spoke to two other victims who, like Harrison were dual victims that not only had

2   both their Social Security benefits diverted, but also had their identities used without their knowledge as

3   the accountholders for drop accounts.  Both of these victims live outside of California, deny banking

4   with the related drop account's financial institution, and deny use of the email account associated with

5   the drop account.  Yahoo accounts, not Gmail accounts, were used for these two victims.

6       **Probable Cause the Account(s) to be Searched Contain Evidence of a Crime**

7       34.   Based on my training and experience and the facts set forth in this affidavit, there is

8   probable cause to believe Willis and Ross engaged in, and continue to engage in, a conspiracy or scheme

9   to unlawfully divert the Social Security benefits of at least 129 victims.  Given the geographic separation

10  of Willis in California from Ross in North Carolina, the two must use telephonic and electronic means of

11  communication to coordinate and carry out their scheme, as evidenced by the 113 call records between

12  Wills and Ross during an approximately 10-month period.  The geographic separation of the

13  coconspirators, and the sheer volume and specificity of the information required to divert the Social

14  Security benefits of at least 129 victims to at least 43 drop accounts further illustrates the need to use

15  electronic means to record and exchange large amounts of information.  There is probable cause to

16  believe that the individual or individuals who established each fraudulent prepaid debit account also

17  created the corresponding Gmail account associated with the prepaid debit accountholder.  Furthermore,

18  there is probable cause to believe that the accounts were created for the explicit purpose of conducting

19  and concealing criminal activity and that any subsequent use of the accounts were for criminal purposes.

20      35.   In order to enable direct deposit for a given prepaid debit card, the cardholder must create

21  an online account with the financial institution where they must provide identifying information required

22  by federal law, to include name, date of birth, address, and identification number (usually a Social

23  Security Number).  Furthermore, the financial institution typically asks for other contact information

24  such as phone number and email address.  To complete the online account registration, the financial

25  institution will typically send a verification email to the email address provided by the accountholder.

26  The accountholder must then access this email and acknowledgment receipt of the email at the email

27  address provided by either clicking a hyperlink in the body of the email or by going to the financial

28  institution's website and entering a registration code from the email.  Once the email address is

1  confirmed and the online account registration complete, the accountholder can then receive account

2  updates via email such as periodic balance updates and notification of deposits and/or withdrawals.

3       36.    For example, according to records provided by American Express, when registering a

4  new online account, American Express first sends an email verification notification to the email address

5  provided by the accountholder.  Once the accountholder receives the verification email and finishes the

6  registration, American Express then sends another email to confirm registration is complete.  American

7  Express may then send other updates about the account via email such as activation of a new card,

8  scheduled balance inquiries, low balance alerts, statement notifications, and direct deposit notifications.

9  In contrast, Green Dot stated they do not send a confirmation email that must be received and

10  acknowledged before finishing the online setup for a new user.

11       37.    Based on my training and experience, there is probable cause to believe the Google

12  accounts used in conjunction with American Express, Green Dot, and Metabank drop accounts are email

13  accounts created and controlled by Willis, Ross, or other coconspirators.  As illustrated by the fact that

14  American Express records show that American Express sent regular balance notifications and direct

15  deposit notifications to the email address on file, the contents of the messages contained in these email

16  accounts may have been used to monitor the accounts.  Furthermore, these email accounts also offer the

17  coconspirators a readymade, anonymous means to communicate among each other about their criminal

18  activity.  Lastly, login session information may identify devices and IP addresses used to access a given

19  drop account and may in turn correspond to devices and IP addresses associated with Willis, Ross, other

20  coconspirators, or other drop accounts.  For Google accounts, Google can use a process known as cookie

21  analysis to identify other Google accounts that were accessed using the same computer that accessed a

22  given Google account.  This information may then in turn identify the individual or individuals

23  controlling the target accounts.

24       38.    Lastly, there is probable cause to believe Willis, Ross, and any other coconspirators

25  communicated about, and took steps in furtherance of, the conspiracy or fraud scheme discussed in this

26  affidavit prior to the first known fraudulent direct deposit change for victim Paul Banh on December 3,

27  2015 and that Google's servers contain evidence of their communications.  Based on my training and

28  experience, I believe their fraud scheme required at least one month of preparation before the first

1  fraudulent direct deposit change was made.  The coconspirators needed this time to formulate the plan,

2  agree on the plan, and then carry out steps of the plan which preceded the first known direct deposit

3  change.  Such preceding steps must include identifying potential victims, retrieving the victims'

4  personally identifiable information from SSA systems, opening drop accounts through which to receive

5  the victims' diverted Social Security benefits, and creating the target email accounts.

6                    **IV.    BACKGROUND CONCERNING EMAIL**

7        39.    In my training and experience, I have learned that Google provides a variety of on-line

8  services, including electronic mail ("email") access, to the public.  Google allows subscribers to obtain

9  email accounts at the domain name gmail.com, like the email account listed in Attachment A.

10  Subscribers obtain an account by registering with Google.  During the registration process, Google asks

11  subscribers to provide basic personal information.  Therefore, the computers of Google are likely to

12  contain stored electronic communications (including retrieved and unretrieved email for Google

13  subscribers) and information concerning subscribers and their use of Google services, such as account

14  access information, email transaction information, and account application information.  In my training

15  and experience, such information may constitute evidence of the crimes under investigation because the

16  information can be used to identify the account's user or users.

17        40.    In my training and experience, email providers generally ask their subscribers to provide

18  certain personal identifying information when registering for an email account.  Such information can

19  include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative

20  email addresses, and, for paying subscribers, means and source of payment (including any credit or bank

21  account number).  In my training and experience, such information may constitute evidence of the

22  crimes under investigation because the information can be used to identify the account's user or users.

23  Based on my training and my experience, I know that even if subscribers insert false information to

24  conceal their identity, I know that this information often provide clues to their identity, location or illicit

25  activities.

26        41.    In my training and experience, email providers typically retain certain transactional

27  information about the creation and use of each account on their systems.  This information can include

28  the date on which the account was created, the length of service, records of log-in (i.e., session) times

1  and durations, the types of service utilized, the status of the account (including whether the account is

2  inactive or closed), the methods used to connect to the account (such as logging into the account via the

3  provider's website), and other log files that reflect usage of the account. In addition, email providers

4  often have records of the Internet Protocol address ("IP address") used to register the account and the IP

5  addresses associated with particular logins to the account. Because every device that connects to the

6  Internet must use an IP address, IP address information can help to identify which computers or other

7  devices were used to access the email account.

8      42.     In my training and experience, in some cases, email account users will communicate

9  directly with an email service provider about issues relating to the account, such as technical problems,

10  billing inquiries, or complaints from other users. Email providers typically retain records about such

11  communications, including records of contacts between the user and the provider's support services, as

12  well records of any actions taken by the provider or user as a result of the communications. In my

13  training and experience, such information may constitute evidence of the crimes under investigation

14  because the information can be used to identify the account's user or users.

15      43.     As explained herein, information stored in connection with an email account may provide

16  crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under

17  investigation, thus enabling the United States to establish and prove each element or alternatively, to

18  exclude the innocent from further suspicion. In my training and experience, the information stored in

19  connection with an email account can indicate who has used or controlled the account. This "user

20  attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search

21  warrant at a residence. For example, email communications, contacts lists, and images sent (and the

22  data associated with the foregoing, such as date and time) may indicate who used or controlled the

23  account at a relevant time. Further, information maintained by the email provider can show how and

24  when the account was accessed or used. For example, as described below, email providers typically log

25  the Internet Protocol (IP) addresses from which users access the email account along with the time and

26  date. By determining the physical location associated with the logged IP addresses, investigators can

27  understand the chronological and geographic context of the email account access and use relating to the

28  crime under investigation. This geographic and timeline information may tend to either inculpate or

1  exculpate the account owner.  Additionally, information stored at the user's account may further indicate

2  the geographic location of the account user at a particular time (e.g., location information integrated into

3  an image or video sent via email).  Last, stored electronic data may provide relevant insight into the

4  email account owner's state of mind as it relates to the offense under investigation. For example,

5  information in the email account may indicate the owner's motive and intent to commit a crime (e.g.,

6  communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an

7  effort to conceal them from law enforcement).

8  **V.     INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

9        44.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in

10 particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require

11 Google to disclose to the government copies of the records and other information (including the content

12 of communications and stored data) particularly described in Section I of Attachment B.  Upon receipt

13 of the information described in Section I of Attachment B, government-authorized persons will review

14 that information to locate the items described in Section II of Attachment B.

15 **VI.     CONCLUSION**

16        45.    Based on the forgoing, I request that the Court issue the proposed search warrant.

17 Because the warrant will be served on Google who will then compile the requested records at a time

18 convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in

19 the day or night.

20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

1

## VII.   REQUEST FOR SEALING

2    46.    I further request that the Court order that all papers in support of this application,

3  including the affidavit and search warrant, be sealed until further order of the Court.  These documents

4  discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the

5  investigation.  Accordingly, there is good cause to seal these documents because their premature

6  disclosure may seriously jeopardize that investigation.

7                                                    Respectfully submitted,

8

9

10                                                   Sean Fagan
                                                     Special Agent
                                                     Social Security Administration
11                                                   Office of the Inspector General

12

13  Subscribed and sworn to before me on:    June 5, 2018

14

15  The Honorable Edmund F. Brennan
    UNITED STATES MAGISTRATE JUDGE
16

17

18  Robert Artuz by AUSA Shelley Weger
19  Approved as to form by AUSA ROBERT J. ARTUZ

20

21

22

23

24

25

26

27

28

AFFIDAVIT                                15

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the email addresses below that are stored at premises controlled by Google LLC, a company that accepts legal process via the Google Law Enforcement Request System accessible at the website lers.google.com.

BERUCKG94@GMAIL.COM

BLAKEANDRE4@GMAIL.COM

BRIANCLARK096@GMAIL.COM

WILLHARR6@GMAIL.COM

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      Cookie analysis results that identify other Google accounts accessed from the same computer or computers used to access the target accounts;

d.      The types of service utilized;

e.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

f.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S. Code § 371 [conspiracy], 18 U.S. Code § 641 [theft of government property], 18 U.S. Code § 1028A [aggravated identity theft], 18 U.S. Code § 1343 [wire fraud], and 42 U.S. Code § 408 [Social Security fraud], including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)     The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s);

(b)     Cookie analysis results that identify other Google accounts accessed from the same computer or computers used to access the target accounts;

(c)     Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

(d)     Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

(e)     Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

(f)     Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts.

(g)     any correspondence, communication, photograph, or other data concerning Social Security programs or containing the personally identifiable information of individuals any

2

individual; any correspondence, communication, or data evidencing an agreement, plan, practice, or other evidence of a scheme or conspiracy to defraud Social Security beneficiaries or Social Security programs; and any correspondence, communication, or data evidencing acts or steps taken to further that scheme or conspiracy, whether inherently unlawful or not;

(h)      lists of Social Security fraud or identity theft victims, or their personally identifiable information;

(i)      the contents of any communication in whatever form between Eric Willis and any other person, including Darron Ross, identified to be involved in a conspiracy or scheme to defraud Social Security beneficiaries or Social Security programs;

(j)      Data evidencing the access or use of any American Express, Green Dot, or Metabank prepaid bank accounts (i.e., drop accounts) used to defraud Social Security beneficiaries or Social Security programs;

(k)      Data evidencing the transfer of illicitly obtained funds from drop accounts to any bank accounts held in the name of Eric Willis or any other person, including Darron Ross, identified to be involved in a conspiracy or scheme to defraud Social Security beneficiaries or Social Security programs; and

(l)      any and all information which may evidence the location of Eric Willis, Darron Ross, or other coconspirators at a given place and time.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# SEALED

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) <br> INFORMATION ASSOCIATED WITH ) <br> BERUCKG94@GMAIL.COM, ) <br> BLAKEANDRE4@GMAIL.COM, ) <br> BRIANCLARK096@GMAIL.COM, AND ) <br> WILLHARR6@GMAIL.COM, THAT IS STORED AT ) <br> PREMISES CONTROLLED BY GOOGLE LLC ) | Case No. <br><br> 2:18-SW-0495   EFB |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____06/22/2018_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    June 8, 2018 _____

_____
*Judge's signature*

City and state:    Sacramento, California _____

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.


_____          _____
Signature of Judge                                              Date

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the email addresses below that are stored at premises controlled by Google LLC, a company that accepts legal process via the Google Law Enforcement Request System accessible at the website lers.google.com.

BERUCKG94@GMAIL.COM

BLAKEANDRE4@GMAIL.COM

BRIANCLARK096@GMAIL.COM

WILLHARR6@GMAIL.COM

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.    Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    Cookie analysis results that identify other Google accounts accessed from the same computer or computers used to access the target accounts;

d.    The types of service utilized;

e.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

f.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S. Code § 371 [conspiracy], 18 U.S. Code § 641 [theft of government property], 18 U.S. Code § 1028A [aggravated identity theft], 18 U.S. Code § 1343 [wire fraud], and 42 U.S. Code § 408 [Social Security fraud], including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)      The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s);

(b)      Cookie analysis results that identify other Google accounts accessed from the same computer or computers used to access the target accounts;

(c)      Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

(d)      Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

(e)      Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

(f)      Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts.

(g)      any correspondence, communication, photograph, or other data concerning Social Security programs or containing the personally identifiable information of individuals any

2

individual; any correspondence, communication, or data evidencing an agreement, plan, practice, or other evidence of a scheme or conspiracy to defraud Social Security beneficiaries or Social Security programs; and any correspondence, communication, or data evidencing acts or steps taken to further that scheme or conspiracy, whether inherently unlawful or not;

(h)     lists of Social Security fraud or identity theft victims, or their personally identifiable information;

(i)     the contents of any communication in whatever form between Eric Willis and any other person, including Darron Ross, identified to be involved in a conspiracy or scheme to defraud Social Security beneficiaries or Social Security programs;

(j)     Data evidencing the access or use of any American Express, Green Dot, or Metabank prepaid bank accounts (i.e., drop accounts) used to defraud Social Security beneficiaries or Social Security programs;

(k)     Data evidencing the transfer of illicitly obtained funds from drop accounts to any bank accounts held in the name of Eric Willis or any other person, including Darron Ross, identified to be involved in a conspiracy or scheme to defraud Social Security beneficiaries or Social Security programs; and

(l)     any and all information which may evidence the location of Eric Willis, Darron Ross, or other coconspirators at a given place and time.